## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| EQUAL EMPLOYMENT<br>OPPORTUNITY COMMISSION, | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | 8:10CV318 |
| V. | ) <br> ) | |
| JBS USA, LLC, | ) <br> ) | ORDER |
| Defendant. | ) <br> ) | |

This matter is before the court on Plaintiff Equal Employment Opportunity Commission's ("EEOC") motion for protective order (filing 113) and the motion to quash (filing 120) filed by Nebraska Equal Opportunity Commission ("NEOC"), a non-party to this action. Upon consideration of the matter, the court concludes that the motions should be granted, in part.

### BACKGROUND

On or about August 19, 2011, Defendant served upon EEOC a Notice of Deposition (filing 114-2) seeking Fed. R. Civ. P. 30(b)(6) testimony regarding the following subjects:

1.  Factual information that supports or rebuts the EEOC's claim in its Second Amended Complaint that Defendant engaged in a pattern or practice of discrimination against alleged aggrieved individuals because of their national origin, race and/or religion.

2.  Factual information that supports or rebuts the EEOC's claim in its Complaint that Defendant engaged in a pattern or practice of unlawful retaliation against alleged aggrieved individuals because of their requests for religious accommodation and/or their complaints regarding denial of religious accommodation.

3.  Factual information that supports or rebuts the EEOC's claim in its Complaint

that Defendant engaged in a pattern or practice of discrimination by unlawfully denying reasonable religious accommodation to its Somali Muslim employees.

4.    Factual information that supports or rebuts the EEOC's claim in its Complaint that Defendant engaged in a pattern or practice of unlawfully terminating its Somali Muslim employees because of their religion, national origin, and in retaliation for their requests for religious accommodation and complaints of denied religious accommodation.

5.    Factual information that supports or rebuts the EEOC's claim in its Complaint that Defendant's claim that Somali Muslim employees were terminated on or about September 18, 2008 for engaging in an unauthorized work stoppage is a pretext for unlawful discrimination.

6.    Factual information that supports or rebuts the EEOC's claim in its Complaint that Defendant engaged in a pattern or practice of failing to reasonably accommodate its Muslim employees' prayers via break times.

7.    Factual information that supports or rebuts the EEOC's claim in its Complaint that allowing Somali Muslim employees to leave the meat processing line to pray was an accommodation that would not have posed an undue burden on Defendant.

8.    From January 1, 2007 to the present, communication between the EEOC and Defendant or its predecessors, or anyone acting on either party's behalf, relating in any way to any of the events described in, or allegations or claims asserted in, the Complaint.

9.    From January 1, 2007 to the present, the contents of all investigative and charge files maintained by the EEOC pertaining to any charges of discrimination filed by the EEOC, or any individual listed in paragraph 6 of the Complaint or Attachment A to the Complaint, against Defendant or its predecessors.

10.    From January 1, 2007 to the present, investigations conducted by the EEOC into all charges of discrimination filed by the EEOC, or any individual listed in paragraph 6 of the Complaint or Attachment A to the Complaint against Defendant or its predecessors.

11.    From January 1, 2007 to the present, statements (verbal, written, recorded or

2

summarized) obtained by the EEOC from any past or present employee of Defendant relating in any way to any of the events described in, or allegations or claims asserted in, the Complaint.

12. Documents and information shared between the EEOC and the NEOC pertaining to the EEOC's or NEOC's investigation of all charges of discrimination filed from January 1, 2007 to the present by any individual listed in paragraph 6 of the Complaint or Attachment A to the Complaint.

13. Contents of and information set forth in Plaintiff EEOC's Rule 26(a) Initial Disclosures, served June 9, 2011.

14. The identify of any past or present employee of the Defendant's Grand Island facility whom the EEOC claims to represent in this action, and the basis for the EEOC's claim of representation.

15. The efforts by the EEOC to conciliate the claims asserted in the Complaint.

16. From January 1, 2007 to the present, communications between the EEOC and any person affiliated with, or acting on behalf of, the United Food & Commercial Workers International Union and its Local Union No. 22 (the "Union"), relating in any way to the events described in, or allegations or claims asserted in, the Complaint.

17. From January 1, 2007 to the present, any internal policies, directives, guidelines or mandates of the EEOC pertaining to the investigation or prosecution of alleged systemic discrimination and/or pattern or practice discrimination.

18. From January 1, 2007 to the present, any internal policies, directives, guidelines or mandates of the EEOC pertaining to the investigation or prosecution of alleged religious discrimination.

19. Requirements, policies, practices, guidelines or procedures approved by the EEOC relating to the religious accommodation of its Muslim employees.

20. Factual information which supports the injunctive relief sought by the EEOC in its Complaint.

On or about August 19, 2011, Defendant also served an amended Rule 30(b)(6) Notice of Deposition (filing 114-3) on the NEOC seeking testimony regarding the following subjects:

1.   From January 1, 2007 to the present, communications between the NEOC and Defendant or its predecessors, or anyone acting on either party's behalf, relating in any way to the events described in, or allegations or claims asserted in, the Second Amended Complaint of the EEOC filed in the above-captioned matter.

2.   From January 1, 2007 to the present, investigations conducted by the NEOC into all charges of discrimination filed by any individual listed in paragraph 6 of the Complaint or Attachment A to the Complaint.

3.   From January 1, 2007 to the present, statements (verbal, written, recorded or summarized) obtained by the NEOC from any past or present employee of Defendant relating in any way to the events described in, or allegations or claims asserted in, the Complaint.

4.   Documents and information shared between the EEOC and the NEOC pertaining to the NEOC's investigation of all charges of discrimination, filed from January 1, 2007 to the present by any individual listed in paragraph 6 of the Complaint or Attachment A to the Complaint.

5.   From January 1, 2007 to the present, communications between the NEOC and any persons affiliated with, or acting on behalf of, the United Food & Commercial Workers International Union and its Local Union No. 22, relating in any way to the events described in, or allegations or claims asserted in, the Complaint.

6.   Factual information that supports or rebuts the EEOC's claim in the Complaint that Defendant engaged in a pattern or practice of discrimination against alleged aggrieved individuals because of their national origin, race and/or religion.

7.   Factual information that supports or rebuts the EEOC's claim in the Complaint that Defendant engaged in a pattern or practice of unlawful retaliation against alleged aggrieved individuals because of their requests for religious accommodation and/or their complaints regarding denial of religious

accommodation.

8.    Factual information that supports or rebuts the EEOC's claim in the Complaint
      that Defendant engaged in a pattern or practice of discrimination by unlawfully
      denying reasonable religious accommodation to its Somali Muslim employees.

9.    Factual information that supports or rebuts the EEOC's claim in the Complaint
      that Defendant engaged in a pattern or practice of unlawfully terminating its
      Somali Muslim employees because of their religion, national origin, and in
      retaliation for their requests for religious accommodation and complaints of
      denied religious accommodation.

10.   Factual information that supports or rebuts the EEOC's claim in the Complaint
      that Defendant's claim that Somali Muslim employees were terminated on or
      about September 18, 2008 for engaging in an unauthorized work stoppage is
      a pretext for unlawful discrimination.

11.   Factual information that supports or rebuts the EEOC's claim in the Complaint
      that Defendant engaged in a pattern or practice of failing to reasonably
      accommodate its Muslim employees' prayers via break times.

12.   Factual information that supports or rebuts the EEOC's claim in the Complaint
      that allowing Somali Muslim employees to leave the meat processing line to
      pray was an accommodation that would not have posed an undue burden on
      Defendant.

13.   Factual information regarding the circumstances of the verification, signature
      and/or notarization of all charges of discrimination filed with the NEOC by
      any individual listed in paragraph 6 of the Complaint or Attachment A to the
      Complaint.

14.   The identification and authentication of all documents created or maintained
      by the NEOC relating in any way to the events described in, or allegations or
      claims asserted in, the Complaint, and which have been produced to
      Defendant.

Following the receipt of their respective notices, the EEOC filed a motion for a
protective order seeking to prevent Defendant from deposing the EEOC and NEOC on the
identified topics. The NEOC likewise filed a motion to quash. These motions will be

discussed in turn below.

## ANALYSIS

### 1.    EEOC's Motion for Protective Order

Generally, parties may discover relevant, non-privileged information that is reasonably calculated to lead to admissible evidence.  Fed. R. Civ. P. 26.  However, the court may issue a protective order to prevent or limit discovery in order to "protect a party or person from annoyance, embarrassment, oppression or undue burden or expense," including "forbidding the disclosure of discovery [and] forbidding inquiry into certain matters." _Id_.  "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." _Seattle Times Co. v. Rhinehart_, 467 U.S. 20, 36 (1984).

The EEOC's primary objection to the Notice of Deposition is that the Notice serves as an improper attempt to obtain EEOC's litigation strategy.  The EEOC contends that Defendant is attempting to uncover privileged and confidential communications in order to attack the sufficiency of the EEOC's processing of the eighty-five charges forming the predicate basis for this lawsuit.  The EEOC also complains that the topics outlined would require the testimony of EEOC counsel, either directly or through a proxy, which would invade work product and attorney-client privileged information.  Defendant maintains, however, that it is simply seeking to discover factual information relating to the claims in this case.  Defendant argues that the EEOC's privilege objections are premature and speculative, as the EEOC has not yet been required to respond to any specific questions.

As explained below, the court concludes that a limited protective order is warranted in this case.  The court acknowledges Defendant's argument that questioning on the listed topics has not yet taken place and that, as a consequence, the EEOC's privilege objections are somewhat speculative. Nevertheless, the court believes that questioning related to several of the identified topics would inevitably invade privileged information.  Therefore, the court finds that a protective order, which serves to clarify and define the parameters of the requested deposition testimony, is appropriate.

6

### A.    Permissible Deponents

As an initial matter, the court will not require the EEOC to produce EEOC attorneys for deposition.  Given the vast number of documents already produced, particularly the investigative files, the court is unable to conclude that the deposition testimony sought is crucial to the preparation of Defendant's case, nor has Defendant made such a showing.  *See Shelton v. American Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986)* (stating that opposing counsel should only be deposed when there are no other means to obtain the information sought and the information is crucial to the preparation of the case).  The court recognizes that, because the EEOC did not conduct the majority of the investigation at issue, it is possible that the EEOC has no other representatives capable of testifying as to several of the permissible areas of inquiry.  However, the EEOC is under no obligation to create or educate a witness so that he or she might serve as a proxy for counsel.  Therefore, to the extent that the EEOC has individuals capable of testifying as to the permissible subject matters, those persons shall be produced for deposition.

### B.    Topics 1-7, 20

The Notice, as written, seeks protected information through Topics 1-7 and 20. (Filing 114-2.)  Defendant argues that through these topics, it only seeks factual information.  However, the Notice does not simply ask for underlying facts, but rather, asks for an interpretation or evaluation of how particular facts support or refute allegations in the Complaint.  Questions seeking an evaluation of facts would unavoidably lead to an invasion of attorney work product.  *See Equal Employment Commission v. McCormick & Schmick's Seafood Restaurants, Inc., No. WMN-08-CV-984, 2010 WL 2572809 (D. Md. June 22, 2010)* (granting motion for protective order where the deposition notice did not ask for the underlying facts, but rather the EEOC's counsel's interpretation of the facts).  Accordingly, the court will not permit Defendant to depose the EEOC regarding these topics.

### C.    Topics 12, 17, 18 & 19

Topic 17 requests testimony regarding "internal policies, directives, guidelines or

mandates of the EEOC pertaining to the investigation or prosecution of alleged systemic discrimination and/or pattern or practice discrimination." (Filing 113-2.) Topic 18 asks for testimony regarding "internal policies, directives, guidelines or mandates of the EEOC pertaining to the investigation or prosecution of alleged religious discrimination." (*Id.*) The EEOC objects to these requests, in part, based on the deliberative process privilege, which protects from disclosure communications and documents "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dept. of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (citations omitted). In response, Defendant asserts that through these topics, it permissibly seeks to depose the EEOC about the scope of the EEOC's investigation and that any objections based on deliberative process are premature.

The court agrees with the EEOC that questions in this area would inevitably invade information protected by the deliberative process privilege. Several courts have determined that inquiries touching on the nature and extent of EEOC investigations are impermissible. For instance, in *EEOC v. Keco Industries, Inc.*, 748 F.2d 1097 (6th Cir. 1984), the Sixth Circuit Court of Appeals stated:

> It was error for the district court to inquire into the sufficiency of the Commission's investigation. In previous cases where the employer has objected to the sufficiency of the EEOC's investigation into a discrimination charge, the courts have precluded use of that objection as a basis for dismissing a charge of discrimination made by the EEOC . . . because the nature and extent of an EEOC investigation into a discrimination claim is a matter within the discretion of that agency. The purpose of the EEOC's investigation of a discrimination charge is to determine if there is a basis for that charge. The reasonable cause of determination issued as a result of the investigation is designed to notify the employer of the EEOC's findings and to provide a basis for later conciliation proceedings . . . That line of inquiry would deflect the efforts of both the court and the parties from the main purpose of this litigation: to determine whether [the defendant] has actually violated Title VII.

*Id.* at 1100 (citations and quotations omitted). *See also EEOC v. Albertsons, LLC*, No. 06-cv-01273, 2008 WL 4877046, *5-6 (D. Colo. Nov. 12, 2008) (denying, in part, a motion to

8

compel the EEOC's 30(b)(6) investigator to testify based on the deliberative process privilege, the court stated that "all of the evidence necessary to defend this case is available elsewhere.  Albertson's has had ample opportunity to discover the facts underlying the EEOC's claims, and it does not need the details of the EEOC's pre-suit investigation to understand or defend those claims").  The court concludes that testimony regarding the EEOC's internal investigative polices, as outlined in Topics 17 and 18, is neither necessary nor appropriate in this case.

The court similarly finds Topic 12 inappropriate.  Topic 12 requests testimony regarding "[d]ocuments and information shared between the EEOC and the NEOC pertaining to the EEOC's or NEOC's investigation of all charges of discrimination filed from January 1, 2007 to the present by any individual listed in paragraph 6 of the Complaint or Attachment A to the Complaint."  (Filing 114-2.)  Again, questioning along these lines would surely lead to an invasion of the deliberative process privilege, as well as others.

The court also fails to see the relevance of Topic 19, which requests testimony regarding "[r]equirements, policies, practices, guidelines or procedures approved by the EEOC relating to the religious accommodation of its Muslim employees."  (Filing 114-2.)  This case does not involve questions of whether the EEOC failed to accommodate the religious practices of its employees.

Inquiry into each of these areas is barred.

D.      **Topics 8, 9, 10, 11, 13, 14, 15 & 16**

The EEOC raises various objections to these requests, including objections based on the deliberative process privilege, attorney client privilege, common interest doctrine and work product doctrine.  The EEOC also contends that it is barred by statute from revealing some of the requested information.  The court agrees that the amount of information discoverable through deposition on these topics would likely be limited by a number of privileges.  Nevertheless, the court will not completely prevent Defendant from deposing the EEOC on these topics.  It will, however, narrow the scope of these areas of inquiry.

Accordingly, inquiry into Topics 8, 9, 10, 11, 13, 14, 15 and 16 is limited to factual information relating to or obtained during the investigation that bears on a claim or defense at issue in this case, and shall not be expanded to include unrelated charges against Defendant or charges filed by the EEOC or the complaining parties against other entities. In other words, Defendant can only seek non-privileged, factual information related to the charges forming the predicate basis for the EEOC's lawsuit. Defendant may, for instance, inquire into factual information regarding the completeness of document production or questions which seek to clarify facts and information, such as information contained in the EEOC's Rule 26(a) initial disclosures. Defendant may also ask general questions related to the EEOC's claims of representation, but may not inquire into the content of any communications.

The EEOC remains free to assert the existence of privileges and refuse to answer improper questions on a question-by-question basis during the deposition.

**Accordingly,**

**IT IS ORDERED** that the EEOC's motion for protective order (filing 113) is granted, in part. The Notice of Deposition addressed to the EEOC is limited as outlined above. Per the EEOC's joint request, the Notice of Deposition addressed to the NEOC will also be modified as set forth below.

2.     **NEOC's Motion to Quash**

The NEOC's motion to quash will be granted, in part. As written, the Notice of Deposition addressed to the NEOC is overly broad and compliance with the request would impose an undue burden on the NEOC. In evaluating whether a subpoena presents an undue burden, courts consider the following factors: (1) the relevance of the information requested; (2) the need of the party for the information; (3) the breadth of the request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested information; and (6) the burden imposed. *Wiwa v. Royal Dutch Petroleum Co.,* *392 F.3d 812, 818 (5th Cir. 2004).* "Further, if the person to whom the document request is

10

made is a non-party, the court may also consider the expense and inconvenience to the non-party." *Id.* at 818 (citations omitted).  *See also Glenford Yellow Robe v. Allender*, Civ. No. 09-5040-JLV, 2010 WL 1780266, *5 (D.S.D. Apr. 30, 2010) ("[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs.").

Defendant asks for testimony on at least eighty-five charges, which include different facts, different witnesses and different information.  According to the NEOC, no single NEOC investigator or supervisor was responsible for all or even many of the case files and many of the individuals most likely to have knowledge about the investigation and facts of the complaints are no longer with the NEOC.  As a consequence, the NEOC represents that it lacks any individuals who would be qualified to testify on much of the information sought by Defendant.

The court believes that factual information regarding the investigation that forms the predicate basis for the Complaint filed against Defendant is generally a proper area of inquiry.  However, the Notice provided to the NEOC is overly broad and, at times, seeks irrelevant information.  Further, questioning on some of the topics would undoubtedly seek to elicit privileged information.  Therefore, the court will limit the scope of the requested deposition(s).

Additionally, the court will require Defendant to better define its areas of inquiry in order to lessen the burden on the NEOC.  Accordingly, at least thirty days prior to any NEOC deposition, Defendant shall particularize its questions about the investigation or other relevant area of questioning to specific individuals, cases, documents or circumstances. Defendant cannot, for instance, merely state that it wishes to gain information about every individual complainant.  Rather, Defendant must as narrowly as possible specify the factual information it wishes to obtain or clarify within each permissible topic.  This specificity will allow the NEOC to designate the appropriate individual(s) for deposition.

### A.   Topics 1, 2, 3, & 5

These topics are similar to several of the those set forth in the Notice addressed to the EEOC.  Thus, questioning into these topics will be permitted, but likewise limited.  As with the topics set forth in the EEOC Notice, inquiry into these topics is limited to questions about the charges or investigation at issue in this case and shall not be expanded to include charges against Defendant that are unrelated to this suit or charges filed by the EEOC or the complaining parties in this lawsuit against other entities.

### B.   Topics 6-12

These requests ask for an evaluation or interpretation of particular facts and allegations contained in the Complaint.  As discussed above, such evaluative testimony is impermissible.  Moreover, the NEOC, a non-party to this action, likely did not take part in drafting the Complaint or formulating the legal theories at issue.  Therefore, it is doubtful that any individual at the NEOC could testify regarding the subjects as listed.  The NEOC is not required to designate an individual to testify regarding these topics.

### C.   Topics 4, 13 & 14

Topic 4, like Topic 12 of the EEOC's Notice, calls for testimony regarding documents and information shared between the NEOC and EEOC.  (Filing 114-3.)  For the reasons previously explained, inquiry into this area is barred.

Topic 13 requests testimony "regarding the circumstances of the verification, signature and/or notarization of all charges of discrimination filed with the NEOC by any individual listed in paragraph 6 of the Complaint or Attachment A to the Complaint."  (*Id.*)  The court finds Topic 13 overly broad as it does not limit itself to charges filed against Defendant.  Moreover, Defendant is in possession of all the charge files and can examine any and all charges and their notarizations or verified signatures and, if necessary, depose the charging parties or notaries about the circumstances of their signatures.  NEOC testimony regarding this matter is unnecessary and unduly burdensome.

12

Topic 14 calls for testimony regarding the "identification and authentication of all documents created or maintained by the NEOC relating in any way to the events described in, or allegations or claims asserted in, the Complaint, and which have been produced to Defendant." (*Id.*)  This request seeks information about documents that have already been provided to the EEOC and, in turn, provided by the EEOC to Defendant.  This request is broadly written and would seemingly require the NEOC to testify regarding the EEOC's production of documents.  If Defendant, through this request, is seeking to clarify the contents of non-privileged documents created by the NEOC during the course of its investigation, it may do so in the context of Topic 2.

Inquiry into each of these topics is precluded.

**IT IS ORDERED** that the NEOC's motion to quash (filing 120) is granted, in part. The Notice of Deposition addressed to the NEOC is limited as outlined above.

**DATED January 19, 2012.**

BY THE COURT:

S/ F.A. Gossett
**United States Magistrate Judge**

13