## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | **CASE NO. 8:10CV318** |
| **Plaintiff,** | **MEMORANDUM AND ORDER** |
| **ABDI MOHAMED, et al.,** | |
| **Plaintiffs/Intervenors,** | |
| **FARHAN ABDI, et al.,** | |
| **Plaintiffs/Intervenors,** | |
| **vs.** | |
| **JBS USA, LLC, f/k/a JBS SWIFT & CO., a/k/a SWIFT BEEF COMPANY,** | |
| **Defendant.** | |

This matter is before the Court on the Motion for Partial Summary Judgment (Filing No. 569) filed by Defendant JBS USA, LLC f/k/a JBS Swift & Co., a/k/a Swift Beef Company ("JBS"). JBS moves for partial summary judgment arguing that some of Plaintiffs' claims are barred by the doctrine of issue preclusion and that the Equal Employment Opportunity Commission ("EEOC") failed to meet the preconditions for bringing its Phase II claims. Also before the Court are Motions to Dismiss (Filing Nos. 594, 595) and a Joint Stipulation for Dismissal (Filing No. 596). For the reasons stated, the Motion for Partial Summary Judgment with respect to issue preclusion will be granted in part. The Motion for Partial Summary Judgment with respect to preconditions to suit will be denied without prejudice to reassertion. The Motions to Dismiss will be granted, and the Joint Stipulation will be approved.

**VOLUNTARY DISMISSALS**

Plaintiffs Sirad Adan, Fartun Warsame, Shukri Wais, Mohamed Guled Farah, Istar Said, Deeq Said, Mohamed Ali, Khadija Hassan, Fatuma Abdullahi, Hodan Abdulle, Burhan Yusuf, Mohamed Mohamed, Shamso Abshir, and Ahmed Dalmar, move to dismiss their claims of hostile work environment and failure to provide religious accommodation. (Filing No. 594.) Plaintiffs Yusuf Dulane, Amina Farah, and Maryan (Asha) Muse, move to dismiss their claim of failure to provide religious accommodation. (Filing No. 595.) The EEOC stipulates that it will not seek relief on behalf of aggrieved individuals in Phase II based on alleged denial of religious accommodations or hostile work environment, and agrees to dismissal of those claims. (Filing No. 596.)

In accordance with Fed. R. Civ. P. 41(a)(2), the Court concludes that the Motions to Dismiss (Filing Nos. 594, 595) should be granted as requested. The Court also concludes that the Joint Stipulation of the EEOC and JBS complies with Federal Rule of Civil Procedure 41(a)(1)(A)(ii), and should be approved.

**PARTIAL SUMMARY JUDGMENT**

**STANDARD OF REVIEW**

"Summary judgment is appropriate when, construing the evidence most favorably to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Crozier v. Wint,* 736 F.3d 1134, 1136 (8th Cir. 2013) (citing Fed. R. Civ. P. 56(c)). "Summary Judgment is not disfavored and is designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n. 2 (8th Cir. 2012) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) *cert. denied*, 132 S.Ct. 513 (2011)) (internal quotations omitted). In reviewing

2

a motion for summary judgment, the court will view "all facts and mak[e] all reasonable inferences favorable to the nonmovant." *Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.,* 703 F.3d 1104, 1107 (8th Cir. 2013). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id.* at 325. Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.*

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Briscoe,* 690 F.3d at 1011 (quoting *Torgerson*, 643 F.3d at 1042) (internal quotations omitted). "'[T]he mere existence of some alleged factual dispute between the parties'" will not defeat an otherwise properly supported motion for summary judgment. *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine

dispute as to those facts." *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 972 (8th Cir. 2012) (quoting *Torgerson*, 643 F.3d at 1042) (internal quotations omitted). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue for trial" and summary judgment is appropriate. *Torgerson*, 643 F.3d at 1042 (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)) (internal quotations omitted).

The Court applies this standard first to JBS's arguments regarding issue preclusion, and then to its arguments that the EEOC failed to meet a precondition to suit.

## ISSUE PRECLUSION

### A.    Uncontroverted Factual Background

Unless otherwise indicated, the following facts were presented in the parties' briefs and were supported by pinpoint citations to admissible evidence in the record that the parties have admitted, or that the parties have not properly resisted[1] as required by NECivR 56.1 and Fed. R. Civ. P. 56.

On April 15, 2011, Plaintiffs filed with the Court a joint Bifurcation Agreement to bifurcate discovery and trial into two phases, Phase I (involving the EEOC's pattern-or-practice claims) and Phase II (all individual claims for relief). (*See* Filing Nos. 76 at 3, 76-1.) Phase II was to address all individual claims for relief, and "[a]ny claims for which no pattern or practice liability was found in Phase I and any claims not tried in Phase I shall be tried under the traditional *McDonnell-Douglas* burden-shifting paradigm [in Phase II], including all claims of harassment/hostile work environment," as well as

---

[1] "Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response."   NECivR 56.1(b)(1).

"[i]ndividual entitlement to back pay, compensatory, and punitive damages." (Filing No. 76.1 at 5.) On May 26, 2011, the Court adopted the Bifurcation Agreement to bifurcate discovery and trial into two Phases. (Filing No. 81.)

Discovery proceeded, and trial was held on the EEOC's pattern or practice claims from May 7, 2013, through May 17, 2013. At the close of the EEOC's evidence, JBS made an oral motion for judgment on partial findings pursuant to Fed. R. Civ. P. 52(c). Based on agreement of the parties as reflected in the Final Pretrial Order, the Court permitted the submission of deposition designations and objections after the close of trial. (*See* Filing No. 479 at 12.) On July 1, 2013, the EEOC submitted additional deposition designations in support of, and in addition to, testimony and evidence presented at the Phase I trial. On October 11, 2013, the Court issued its Findings of Fact and Conclusions of Law. (Filing No. 516 at 13, 26, 32-39.) The Court incorporates its Findings of Fact and Conclusions of Law into this Memorandum and Order. The Court concluded that although the EEOC established a prima facie case of denial of religious accommodation, the requested accommodations imposed an undue burden on JBS.

**B.    Discussion**

JBS argues that the Court's Findings of Fact and Conclusions of Law in Phase I preclude the individual Plaintiffs ("Individual Plaintiffs") from pursuing claims of religious discrimination and retaliation in Phase II. Specifically, JBS points to the Court's findings that (a) JBS did not discipline or discharge any of its Muslim employees for praying, and (b) Somali-Muslim employees who left the plant the night of September 18, 2008, were terminated for withholding work and violating the Collective Bargaining Agreement

5

("CBA"). JBS asserts that these findings establish that its reason for terminating the employees was legitimate and nondiscriminatory, and preclude Plaintiffs from pursuing claims that they were terminated or otherwise retaliated against for requesting religious accommodation. Finally, JBS argues that because the Court concluded the Plaintiffs' requested religious accommodations would impose an undue hardship on JBS, it is established in Phase II that JBS did not unlawfully deny Plaintiffs' requested religious accommodations.

JBS's arguments are based on the doctrine of issue preclusion. "Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1 (1984). The Eighth Circuit has stated that collateral estoppel, or issue preclusion, operates "to bar relitigation of a single *ultimate issue of fact* (not an entire cause of action) when that issue of fact has actually been determined by a valid judgment in a prior proceeding between the same parties." *Lundquist v. Rice Mem'l Hosp.*, 121 F. App'x 664, 668 (8th Cir. 2005) (emphasis in original) (citing *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 335 F.3d 752, 758 (8th Cir. 2003)). Issue preclusion has five elements:

> (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment.

*Sandy Lake Band of Miss. Chippewa v. United States*, 714 F.3d 1098, 1102–03 (8th Cir. 2013) (quoting *Robinette v. Jones*, 476 F.3d 585, 589 (8th Cir.2007)). A party asserting issue preclusion must establish each of the necessary elements. 18 C. Wright, A. Miller,

6

& E. Cooper, Federal Practice and Procedure § 4405, p. 82 (2d ed. 2002). The EEOC argues that JBS has failed to establish elements 1, 2, 3, and 5.

### 1.      Privity Between the EEOC and Intervenors

The parties disagree as to whether the Individual Plaintiffs were parties to Phase I, and/or in privity with the EEOC during Phase I. In general, there is privity between the EEOC and the individuals for whom it seeks benefits. *EEOC v. Harris Chernin, Inc.*, 10 F.3d 1286, 1291 (7th Cir. 1993). However, the interests of the EEOC and an individual victim of discrimination are not always identical. *Riddle v. Cerro Wire & Cable Grp., Inc.*, 902 F.2d 918, 922 (11th Cir. 1990) (citing *Telephone Company of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 326 (1980)). Thus, although privity between the EEOC and aggrieved individuals may be sufficient to meet the first element of issue preclusion, if "during the course of the EEOC's litigation the interests of the aggrieved individual on whose behalf the EEOC initiated litigation and the EEOC diverge, privity between those parties is destroyed." *Matthews v. NPMG Acquisition Sub, LLC*, No. CV 09-2326-PHX-MHM, 2010 WL 3023300, at *3 (D. Ariz. July 30, 2010) (unpublished).

Regarding the issues JBS seeks to preclude in Phase II, the EEOC's interests were aligned with those of the Individual Plaintiffs. The EEOC and Individual Plaintiffs expressly entered into a bifurcation agreement, knowing that resolution of some issues in Phase I could affect litigation of several issues in Phase II. For example, the parties agreed that in Phase I JBS could "raise the affirmative defense of undue hardship as to alleged denial of religious accommodation and challenge the reasonableness of any suggested accommodation." (Filing No. 76-1 at 2.) This agreement recognized that the EEOC would litigate the Plaintiffs' position regarding the undue hardship defense, even

7

though the Court's findings could have an impact on Phase II. Further, the EEOC has previously argued "that the adjudicated Phase I claims and the pending Phase II claims are closely related and stem from essentially the same factual allegations." (Filing No. 541 at 24 (internal marks omitted).) Thus, even though the EEOC could not seek damages for the Individual Plaintiffs in Phase I, there is no indication that the interests of the EEOC and those of the Individual Plaintiffs diverged. Because the Plaintiffs agreed that the factual and legal issues in both phases overlapped significantly, the EEOC's litigation in Phase I did not unfairly deny the Individual Plaintiffs an opportunity to assert their interests. *See e.g. Riddle*, 902 F.2d at 922. Accordingly, the EEOC and the Individual Plaintiffs were in privity during Phase I for purposes of issue preclusion.

### 2. Issues Involved in Phase I

The second element of issue preclusion is met where the issue raised in the second proceeding was raised in the first proceeding by the party sought to be precluded. *Sandy Lake Band of Miss. Chippewa*, 714 F.3d at 1103; *Simmons v. O'Brien*, 77 F.3d 1093, 1097 n. 4 (8th Cir. 1996). JBS seeks to preclude claims in Phase II regarding: (a) whether JBS committed any unlawful acts in denying religious accommodations; (b) whether Individual Plaintiffs' accommodation requests would impose an undue burden on JBS; (c) whether JBS committed any unlawful acts in terminating Individual Plaintiffs' employment; and (d) whether JBS unlawfully retaliated against Individual Plaintiffs.[2]

---

[2] Individual Plaintiffs' claims are based on religion, race, color, national origin, and gender. JBS seeks to preclude issues related only to religion, race, color, and national origin. (Filing No. 570 at 11-12.)

The EEOC disputes whether it raised the issues in Phase I that JBS seeks to preclude in Phase II. Specifically, the EEOC argues that the relief Individual Plaintiffs seek in Phase II is separate and distinct from the EEOC's pattern or practice claims in Phase I.[3] However, the underlying facts supporting the EEOC's pattern or practice claims also form the basis for the Individual Plaintiffs' claims (*see* Filing Nos. 91, 99, 100), and, as the EEOC stated previously, "are closely related and stem from essentially the same factual allegations." (Filing No. 541 at 24.) Evidence regarding the mass walkouts and terminations that will affect Individual Plaintiffs' claims in Phase II was offered in the EEOC's case in chief, and in JBS's defense in Phase I. Specifically, the parties addressed factual and legal issues related to JBS's reasons for terminating Somali-Muslim employees, as well as whether the requested accommodations imposed an undue hardship on JBS. These issues must also be addressed as part of Individual Plaintiffs' claims in Phase II.

The EEOC also argues that the issues to be raised in Phase II are distinct because the claims will be decided under a different standard.[4] "Courts have readily perceived that for purposes of preclusion, issues are not identical if the second action involves application of a different legal standard, even though the factual setting of both

---

[3] This argument appears at odds with the EEOC's previous position that bifurcation would "reduce the range of issues in dispute and promote judicial economy." (Filing No. 39 at 3 (citing *Robinson v. Metro-North Commuter R.R. Co.*, 276 F.3d 147, 168 (2d Cir. 2001).) While many of Plaintiffs' claims may be distinct from the Phase I pattern or practice claims, in arguing for bifurcation, the EEOC recognized that the determination of factual and legal issues in Phase I would streamline proceedings in Phase II. The EEOC argued that if the case were not bifurcated, the parties would have had to conduct simultaneous discovery on both the pattern or practice claims and the Individual Plaintiffs' individual claims, creating serious logistical problems and protracted litigation. (Filing No. 39 at 10-11.) Presumably, the EEOC recognized that fact discovery in Phase II would be narrowed by common issues addressed in Phase I.

[4] The EEOC's pattern or practice claims in Phase I were to be analyzed under *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977), while Phase II would proceed under the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

9

suits be the same." 18 Wright, Miller & Cooper, Federal Practice and Procedure § 4417, at 165 (marks and internal citation omitted); *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995). However, "careful examination of the controlling legal principles may show that the standards are the same, or that the fact findings have the same effect under either standard, so that the same issue is presented by both systems of law." *Id.* In its Conclusions of Law, the Court noted:

> While the EEOC has met its initial prima facie case of failure to accommodate, the Court makes *no finding on whether the EEOC has established a pattern or practice of doing so.* Because the Court finds that JBS has proven its affirmative defense of undue hardship, the Court need not address the pattern or practice aspect of the EEOC's claims.

(Filing No. 516 at 32 n. 6 (emphasis added).) The Court's ultimate conclusion in Phase I was not predicated on the *Teamsters* pattern or practice analysis.[5] Accordingly, the fact that Phase II is to be analyzed under a different analytical framework has no bearing on whether issue preclusion applies.

### 3.   Issues Actually Litigated and Essential to the Judgment

The Court will address the third element (issue actually litigated) and fifth element (prior determination essential to the judgment) together. Issue preclusion is "applied only when the party against whom the earlier decision is being asserted had a full and fair opportunity to litigate the issue in question." *Lovell v. Mixon*, 719 F.2d 1373, 1376 (8th Cir. 1983). "The requirement of collateral estoppel that the issue be 'actually litigated' does not require that the issue be thoroughly litigated." *Cont'l Can Co., U.S.A.*

---

[5] Although issues affecting the Individual Plaintiffs' discrimination claims were raised and the Court made findings as to the reason for terminating several employees, the Court did not analyze these issues under the *Teamsters* or *McDonnell Douglas* framework. As discussed below, these findings were not essential to the judgment in Phase I, and therefor inappropriate for issue preclusion.

*v. Marshall*, 603 F.2d 590, 596 (7th Cir. 1979). If the parties to the first action disputed the issue and the court resolved it, the doctrine of collateral estoppel "may fully apply no matter how slight the amount of evidence was on which a determination was rendered." *Id.* (internal marks and citation omitted). Of the remaining claims,[6] the Court concludes that the undue hardship defense has been established for purposes of Phase II.

### a.   Undue Hardship

JBS's undue hardship defense was fully litigated and essential to the Phase I judgment. The Phase I trial addressed whether the requested religious accommodations of unscheduled prayer breaks and/or mass meal breaks imposed an undue burden on JBS. (Filing Nos. 516 at 33-34; 479 at 4-5.)  Both parties presented evidence as to whether these accommodations would pose an undue hardship to JBS, and the Court fully considered their respective arguments and evidence. The Court granted JBS's Motion under Federal Rule of Civil Procedure 52(c) after the Phase I trial, largely because it found JBS had proven that the proposed accommodations would create an undue hardship on JBS. The Court's findings are detailed in its Conclusions of Law on Phase I. (Filing No. 516 at 32-39.) These issues were fully litigated and essential to Phase I, and they should not and will not be relitigated in Phase II. For purposes of the Individual Plaintiffs' Phase II claims, it is established that the requested

---

[6] As stated above, several of the Plaintiffs have moved to dismiss their religious accommodation and hostile work environment claims. (Filing Nos. 594, 595.) Further, JBS and the EEOC have stipulated that the EEOC will not seek relief in Phase II based on religious accommodation or hostile work environment claims. (Filing No. 596.) Remaining before the Court are several individual claims regarding wrongful termination and retaliation on the basis of religion, race, color, national origin, and gender. Further, not all of the Plaintiffs have stipulated or moved to dismiss their religious accommodation and/or hostile work environment claims.

accommodations of unscheduled prayer breaks and/or mass meal breaks imposed an

undue hardship on JBS.[7]

### b.    Employee Discipline and Reasons for Termination

A closer question is whether any of the Individual Plaintiffs' individual remaining

claims are precluded based on issues decided in Phase I. The Court determined in its

Findings of Fact that the terminations connected to the walkout and other events of

September 18, 2008, were not indicative of a pattern or practice of discrimination.

(Filing No. 469 at 37-41.) Also, the Court found that, "[a]t no time did JBS discipline or

discharge any of its Muslim employees for praying, but some were disciplined for

walking off their lines without permission." (Filing No. 516 at 13.) The Court further

found that "[t]he Somali Muslim employees who left the plant [on September 18, 2008,]

were terminated the following day for withholding work and violating the 'No Strike/No

Lockout' provision of the CBA." (Filing No. 516 at 26.) JBS argues that any of the

Plaintiffs' Phase II claims connected to the terminations that took place on September

18, 2008, should be dismissed because the Court has already determined that JBS's

reason for terminating the Somali-Muslim employees was non-discriminatory.

Although the Court agrees that these issues were raised and actually litigated in

Phase I, the Court cannot conclude that these Findings were essential to the outcome

of Phase I. "Issue preclusion bars successive litigation of 'an issue of fact or law' that 'is

actually litigated and determined by a valid and final judgment, and . . . is essential to

---

[7] The effect of this conclusion is to dismiss all remaining religious accommodation claims because undue hardship is an affirmative defense to such claims. *Harrell v. Donahue*, 638 F.3d 975, 979 (8th Cir. 2011) (citing 42 U.S.C. § 2000e(j)). The Court recognizes that its conclusion in this Memorandum and Order may also affect other individual claims; however, without further direction from the parties, the Court will not speculate at this time about which claims or defenses may be precluded.

the judgment.'" *Bobby v. Bies*, 556 U.S. 825, 834 (2009) (quoting Restatement (Second) of Judgments § 27 (1980)). "If a judgment does not depend on a given determination, relitigation of that determination is not precluded." *Id.* (citing Restatement (Second) of Judgments § 27 (cmt. *h*)). The Supreme Court explained that "[a] determination ranks as necessary or essential only when the final outcome hinges on it." *Id.* at 835 (citing 18 Wright, Miller, & Cooper, Federal Practice and Procedure § 4421, p. 543).

For purposes of Phase I, the only finding essential to the outcome was that the Plaintiffs' proposed accommodations would have imposed an undue hardship on JBS. As stated in the Pretrial Order, the issue to be determined at the Phase I trial was limited to:

> Whether JBS violated Title VII by engaging in a pattern or practice of failing to reasonably accommodate the religious practices of Somali Muslim employees by: (i) allowing them to take unscheduled breaks to pray; and/or (ii) moving the meal break during the remainder of Ramadan 2008 (from September 18 through September 30, 2008), to a time that coincided closely with such employees' sunset prayer time.

(Filing No. 479 at 4.)  During Phase I, the Court did not make a through and meaningful assessment of whether any Plaintiff suffered an adverse employment action as the result of discrimination or retaliation, because such claims were outside the scope of Phase I. The Court specifically noted in its Conclusions of Law that it did not determine whether any of the Individual Plaintiffs suffered an adverse employment action. (Filing No. 516 at 32 n. 5.)  Although the Court reviewed certain aspects of the EEOC's prima facie case, the Court did not need to address all the EEOC's claims because JBS proved its undue hardship defense. (*Id.* at 32 n. 6.)  The Court found that Somali-Muslim employees were not disciplined for praying, and their terminations were due to their

13

violation of the CBA, but neither conclusion was essential to the judgment in Phase I. Accordingly, collateral estoppel is inappropriate with respect to these issues in Phase II.

## C.     Conclusion

JBS has proven each of the elements necessary for issue preclusion regarding whether the Individual Plaintiffs' requested religious accommodations of unscheduled prayer breaks and/or mass meal breaks imposed an undue hardship on JBS. JBS has not proven that collateral estoppel applies to the other issues identified, because the Court's conclusions on those issues were not essential to the Phase I judgment.

### FAILURE TO CONCILIATE

## A.     Undisputed Factual Background

Eighty-five predicate EEOC charges were filed against JBS arising out of operations at its Grand Island, Nebraska, facility (the "Nebraska Charges"). About the same time the charges were filed against JBS in Nebraska, the EEOC filed charges against JBS at its Greely, Colorado, facility (the "Colorado Charges"). In September 2009, the EEOC sent JBS a letter seeking to engage in informal conciliation. EEOC representatives from both the Kansas City Area Office and the Denver Field Office participated during the two meetings that followed on September 9, and September 29, 2009. During these meetings, the EEOC and JBS discussed conciliation for the predicate charges against both the Nebraska and Colorado JBS facilities. The EEOC sought monetary relief in the amount of $50,000.00 for each aggrieved individual. When asked why the amount requested was the same for all individuals, an EEOC representative admitted that for some individuals the amount was high, for others it was low, and that it was an estimate of the average damages. (Filing No. 357-2 at ECF 3.)

14

On November 30, 2012, JBS moved for summary judgment to dismiss the EEOC's three Phase I pattern or practice claims on the grounds the EEOC had failed to satisfy the conciliation requirement prior to bringing the lawsuit. JBS alleged that the EEOC failed to identify specific accommodations and failed to offer a good faith opportunity for voluntary compliance. (Filing No. 346 at 55-56, 70-73.) Regarding the EEOC's Phase I claims, the Court concluded that the EEOC had satisfied the Title VII conciliation requirements. (Filing No. 469 at 27-29.) The Court noted that there was no evidence to suggest that the circumstances of the parties' attempted conciliation were so extreme so as to merit dismissal for lack of conciliation. (*Id.* at 29.)

## B.    Discussion

JBS argues that the EEOC failed to fulfill its pre-litigation obligations with respect to its attempts to conciliate the individual claims. "The EEOC may bring a direct suit against an employer only after it has attempted to conciliate in good faith but failed to reach an agreement." *E.E.O.C. v. Trans States Airlines, Inc.*, 462 F.3d 987, 996 (8th Cir. 2006) (citing 42 U.S.C. § 2000e–5(f)(1); *Johnson v. Nekoosa–Edwards Paper Co.*, 558 F.2d 841, 848 (8th Cir.1977)). "Only if conciliation proves to be impossible do we expect the Commission to bring action in Federal district court to seek enforcement." *E.E.O.C. v. Hickey–Mitchell Co.*, 507 F.2d 944, 948 (8th Cir.1974) (citing 118 Cong. Rec. 7563 (1972) (remarks of Congressman Perkins)).    "To satisfy the statutory requirement of good faith conciliation, the EEOC must '(1) outline to the employer the reasonable cause for its belief that the law has been violated; (2) offer an opportunity for voluntary compliance; and (3) respond in a reasonable and flexible manner to the reasonable attitudes of the employer.' " *E.E.O.C. v. UMB Bank, N.A.*, 432 F.Supp.2d

15

948, 954 (W.D. Mo. 2006) (quoting *E.E.O.C. v. Asplundh Tree Expert Co.*, 340 F.3d 1256, 1259 (11th Cir.2003)). "Whether the EEOC has adequately fulfilled its obligation to conciliate is dependent upon the 'reasonableness and responsiveness of the [EEOC's] conduct under all the circumstances.'" *Id.* "The EEOC's efforts should be considered sufficient if it made a sincere and reasonable attempt to negotiate by providing [the employer] with an 'adequate opportunity to respond to all charges and negotiate possible settlements.'" *Id.* (quoting *E.E.O.C. v. One Bratenahl Place Condominium Assoc.*, 644 F. Supp. 218, 220 (N.D. Ohio 1986)).

The EEOC argues that the Court's findings in Phase I preclude relitigating the sufficiency of the conciliation efforts in Phase II. Further, even if the Court considers JBS's arguments about the EEOC's conciliation efforts with respect to the individual claims, the EEOC argues that its attempts at conciliation were sufficient. For the reasons stated, the Court concludes that the EEOC's conciliation efforts allow it to avoid dismissal.

### 1.   *Issue Preclusion*

The EEOC first argues that JBS should be precluded from asserting any deficiencies in pre-conciliation efforts because the Court already concluded in Phase I that the EEOC sufficiently attempted to conciliate. However, the issue before the Court—whether the EEOC sufficiently attempted to conciliate the *individual* claims—is not the same issue before the Court in Phase I—whether the EEOC sufficiently attempted to conciliate its *pattern or practice* claims. The EEOC cannot satisfy the conciliation requirement for individual claims solely by attempting to conciliate class-wide claims. *EEOC v. Bloomberg L.P.*, 967 F. Supp. 2d 802, 813 (S.D.N.Y. 2013)

16

(stating that the EEOC could not use class-wide claims to conduct an end run around the prelitigation requirements that must be satisfied before bringing suit on behalf of individual claimants). The Court did not address the EEOC's conciliation efforts with respect to the individual claims. Accordingly, issue preclusion is inappropriate.

### 2.    *Sufficiency of Conciliation Efforts*

JBS argues that with respect to the individual claims, the EEOC failed to offer an opportunity for voluntary compliance, and failed to respond in a reasonable, flexible manner to JBS. *See EEOC v. UMB Bank, N.A.*, 432 F. Supp. 2d 948, 954 (W.D. Mo. 2006) (quoting *EEOC v. Asplundh Tree Expert Co.*, 340 F.3d 1256, 1259 (11th Cir. 2003)). Since the time the Court first considered this issue, a circuit split has arisen as to whether failure to conciliate is an affirmative defense. Recently, the Seventh Circuit noted that the language of the statute and lack of a meaningful standard persuaded the court that failure to conciliate is *not* an affirmative defense. *E.E.O.C. v. Mach Min., LLC*, 738 F.3d 171, 173 (7th Cir. 2013) *cert. granted sub nom. Mach Mining, LLC v. E.E.O.C.*, 134 S. Ct. 2872 (2014). The Supreme Court has granted certiorari on the question of "[w]hether and to what extent may a court enforce the EEOC's mandatory duty to conciliate discrimination claims before filing suit?"  Questions Presented at 1, *Mach Mining,* No. 13-2456, 134 S. Ct. 2872 (2014), *available at* http://www.supremecourt.gov/qp/13-01019qp.pdf. Oral argument before the Supreme Court was held on January 13, 2015. Docket Entry for Jan 13, 2015, *Mining,* No. 13-

2456, *available at* http://www.supremecourt.gov/search.aspx?filename=/docketfiles/13-1019.htm.

JBS points out several deficiencies in the EEOC's conciliation efforts. For example, the EEOC demanded $50,000.00 in damages for each individual, without proper explanation as to how it arrived at that figure for each individual. Further, the EEOC represented to JBS that its compliance obligations would be different for each aggrieved individual; however, there is no evidence that the EEOC provided any direction as to how such compliance would be accomplished. The EEOC argues that it provided sufficient, individualized detail as to each of the aggrieved individuals and provided reasonable and detailed guidelines for compliance. Because of the pending question before the Supreme Court, this Court will not resolve the issue at this time. For purposes of this Motion, the Court will presume without deciding that the EEOC satisfied it's conciliation efforts and will permit this case to progress. However, JBS will not be precluded from reasserting its position after the Supreme Court issues its opinion in *Mach Mining, LLC v. E.E.O.C.*.

C.    **Conclusion**

The parties dispute the nature of the EEOC's conciliation efforts. The Supreme Court's pending decision in *Mach Mining, LLC v. E.E.O.C.* may address the standard for reviewing conciliation efforts, as well as the effect of the EEOC's alleged failure to conciliate. Accordingly, the Court will deny JBS's Motion for Partial Summary Judgment on the EEOC's failure to conciliate, without prejudice to reassertion.

18

IT IS ORDERED:

1.      The Motion for Partial Summary Judgment (Filing No. 569), filed by
        Defendant JBS USA, LLC f/k/a JBS Swift & Co., a/k/a Swift Beef
        Company ("JBS"), is granted in part, as follows:

        a.      For purposes of Plaintiffs' Phase II claims, it is established that the
                requested accommodations of unscheduled prayer breaks and/or
                mass meal breaks imposed an undue burden on JBS;

        b.      All Phase II claims alleging that JBS failed to provide reasonable
                religious accommodation under 42 U.S.C. § 2000e(j) are
                dismissed, with prejudice;

        The Motion for Partial Summary Judgment is otherwise denied, without
        prejudice to JBS's reassertion of its failure to conciliate arguments, after
        the United States Supreme Court issues its opinion in *Mach Mining, LLC
        v. E.E.O.C.*, No. 13-2456, 134 S. Ct. 2872 (2014);

2.      The Motion to Dismiss (Filing Nos. 594) filed by Plaintiffs Sirad Adan,
        Fartun Warsame, Shukri Wais, Istar Said, Deeq Said, Mohamed Ali,
        Khadija Hassan, Fatuma Abdullahi, Hodan Abdulle, Burhan Yusuf,
        Mohamed Mohamed, Shamso Abshir, and Ahmed Dalmar, is granted, and
        their claims of hostile work environment and failure to provide religious
        accommodation are dismissed;

3.      The Motion to Dismiss (Filing No. 595) filed by Plaintiffs Yusuf Dulane,
        Amina Farah, and Maryan (Asha) Muse, is granted, and their claim of
        failure to provide religious accommodation is dismissed; and

19

4.     The Joint Stipulation (Filing No. 596) of JBS and Plaintiff Equal Employment Opportunity Commission (the "EEOC") is approved, and the EEOC's claims based on alleged denial of religious accommodations or hostile work environment, are dismissed.

Dated this 28th day of January, 2015.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge